**U.S. DEPARTMENT OF HOMELAND SECURITY**
**U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT**

In the Matter of

▉▉▉▉▉▉▉▉    File No. A#: ▉▉▉▉

*Respondent*

Decision Tracking Number: ▉▉▉▉

**NOTICE OF APPEAL, APPEAL, AND WRITTEN DEFENSE IN OPPOSITION
TO ICE DECISION TO FINE UNDER INA § 274D**

Daniela Czemerinski, Esq.
Legal Aid Justice Center
6402 Arlington Blvd., Ste. 1130
Falls Church, VA 22042
(434) 494-9859
daniela@justice4all.org
*Attorney for Respondent*

## INTRODUCTION AND DENIAL OF ALLEGATIONS

Under 8 C.F.R. 281.1(e), ▉▉▉▉▉▉ hereby appeals the civil fines Decision issued on February 12, 2026, by the Department of Homeland Security ("DHS"), and denies liability for the $1,820,352 fine assessed against her under section 274D of the Immigration and Nationality Act ("INA"). DHS cannot impose the fine absent evidence to support each element required to sustain a fine under INA § 274D. *See* 5 U.S.C. § 556 ("A sanction may not be imposed or rule or order issued except on consideration of the whole record or those parts thereof cited by a party and supported by and in accordance with the reliable, probative, and substantial evidence."). ▉▉▉▉▉▉ denies all allegations in the Decision, and denies that DHS has met their burden to prove the allegations, which do not constitute evidence. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 256–57 (1986) (discussing difference). ▉▉▉▉▉▉ requests a copy of any evidence DHS claims supports the allegations and an opportunity to respond to any such evidence. 8 C.F.R. § 281.1(e)(3).

The imposition of this fine violates ▉▉▉▉▉▉ s rights under constitution, code, and other law. Finally, ▉▉▉▉▉▉ puts DHS on notice that during the pendency of this appeal and any subsequent judicial review thereof, this debt is not "legally enforceable"[1] for the purposes of referral to Department of Treasury Cross Servicing and further involuntary collection.

---

[1] Alleged agency debts may not be referred to Department of Treasury Cross Servicing unless they are certified by the collecting agency to be "valid, legally enforceable, and that there are no legal bars to collection" and that the agency has "complied with all prerequisites to a particular collection action under the laws, regulations or policies applicable to the debt." 31 CFR § 285.12(i); see also 1 Treasury Financial Manual §§ 3-3025.10, 3-5030.20 (available at: https://tfx.treasury.gov/tfm/volume1/part3/chapter-5000-collecting-delinquent-nontax-debt-through-treasury-cross-servicing). "Legally enforceable... means there has been a final agency determination that the debt, in the amount stated, is due, and there are no legal bars to collection. A debt would not be legally enforceable, for example, if the debt is... [t]he subject of a pending administrative review required by a statute or regulation that prohibits collection action during the review process[.]"

1

## RELEVANT FACTS AND PROCEDURAL HISTORY

▉▉▉▉▉▉ entered the United States on around July 27, 2016. She was in a DHS or ORR family shelter with her minor son for several days prior to being released on recognizance around August 8, 2016. During ▉▉▉▉▉▉'s detention, she told immigration officials about her fear of returning to Honduras and she passed her credible fear interview.

▉▉▉▉▉▉ and her minor son were unrepresented in their removal proceedings because they were indigent and did not have the resources to obtain counsel. After being unsuccessful in obtaining relief, ▉▉▉▉▉▉ was able to seek out counsel to timely contest her removal order. Counsel filed an application for asylum, withholding of removal, and protection under the Convention Against Torture along with a Motion to Reopen and Rescind Removal Order. In that application, she explained her fear of returning to Honduras.

The Motion to Reopen and Rescind Removal Order was denied on August 7, 2017. Up to this point, ▉▉▉▉▉▉ s counsel had charged her $4,250, and ▉▉▉▉▉▉ could not afford to appeal her case to the Board of Immigration Appeals or file a Petition for Review to the Fourth Circuit Court of Appeals.

▉▉▉▉▉▉ lacks the means to pay the fine DHS intends to impose on her. ▉▉▉▉▉▉ and her partner currently support her three children, two of whom are U.S. citizens. They are only earning enough money to make ends meet. ▉▉▉▉▉▉ does not have resources to pay any fines imposed by DHS.

## ARGUMENT

**I.    <u>The Government Bears the Burden of Proof.</u>**

DHS bears the burden of proving the allegations and charges against M▉▉▉▉ ▉▉▉ included in the Decision. Although the INA is silent as to which party bears the burden of proving a violation of INA § 274D(a) and establishing the corresponding civil penalty, the Administrative Procedure Act puts the burden of proof on the party imposing a sanction. 5 U.S.C. § 556(d). DHS therefore bears the burden in this case.

The civil fines at issue, which are "quasi-criminal" in nature, are designed to punish non-citizens and to encourage them to self-deport.[2] *See United States v. Sanchez*, 520 F. Supp. 1038, 1042 (S.D. Fla. 1981), *aff'd* 703 F.3d 580 (11th Cir. 1983) (describing the civil penalty imposed under INA § 273 for unlawfully bringing non-citizens into the United States as "quasi-criminal"). Given the seriousness of the penalty, the government must carry the burden by "clear, unequivocal, and convincing evidence." *See Woodby v. Immigration & Naturalization Serv.*, 385 U.S. 276, 277 (1964) (providing "clear, unequivocal, and convincing evidence" as the standard of proof in deportation hearing in light of the seriousness of the penalty).

**II.    <u>The Government has not met its burden of proof.</u>**

Here, DHS cannot meet its burden because it has supplied no evidence to establish its allegations. In its Notice, DHS alleges, and therefore bears the burden of establishing, that ▉

---

[2] *See* Presidential Proclamation, *Establishing Project Homecoming* (May 9, 2025) section 3 (including penalties for failing to depart include fines, garnishment of wages, and confiscation of savings and personal property, including homes and vehicles), https://www.whitehouse.gov/presidential-actions/2025/05/establishing-project-homecoming/; *see also* Hamed Aleaziz, *Trump's New Penalty for Undocumented Immigrants: Billions of Dollars in Fines*, N.Y. Times (May 22, 2025) https://www.nytimes.com/2025/05/22/us/politics/trump-administration-fine-undocument-immigrants.html; Reuters, *4,500 migrants told to pay fines up to $1.8 million*, NBC News (May 20, 2025), https://www.nbcnews.com/news/latino/4500-migrants-told-pay-fines-ranging-18-million-rcna207958.

███████ willfully failed or refused to depart from the United States pursuant to an order of removal made final on August 7, 2017.

███████ denies the allegation that she willfully failed or refused to depart from the United States pursuant to the August 7, 2017, order. Because this allegation is unsubstantiated, the legal charge corresponding to INA § 274D(a)(1)(A), that she "willfully fail[ed] or refus[ed] to depart from the United States pursuant to the order" cannot be sustained. Nor has DHS met its burden in calculating the penalty, having not established when ██ ███████ s alleged failure or refusal to depart became willful. On a plain reading of the statute and based upon the available evidence, this Decision must be rescinded for failure to allege a violation of INA § 274D.

**A. DHS has not proven any willful failure or refusal by  to depart.**

As relevant here, INA § 274D(a) provides fines as follows:

(a) In general
Any [noncitizen][3] subject to a final order of removal who—
    (1) willfully fails or refuses to—
        (A) depart from the United States pursuant to the order,
        (B) make timely application in good faith for travel or other documents necessary for departure, or
        (C) present for removal at the time and place required by the Attorney General; or
    (2) conspires to or takes any action designed to prevent or hamper the [noncitizen's] departure pursuant to the order

shall pay a civil penalty of not more than $500[4] to the Commissioner for each day the [noncitizen] is in violation of this section.

---

[3] This brief uses the term "noncitizen" as equivalent to the statutory term "alien." *See, e.g.*, *Santos-Zacaria v. Garland*, 598 U.S. 411, 414 n.1 (2023) (*citing Nasrallah v. Barr*, 590 U. S. 573, 578 n. 2 (2020)) (slip op., at 4, n. 2).
[4] This daily amount has been periodically adjusted for inflation, pursuant to 8 C.F.R. § 280.53(b)(14). *See* discussion in Section III.C.4, *infra*.

4

from the United States"). In reversing a failure to depart conviction, the Supreme Court equated "willfully" with a "bad purpose." *Id.* at 279; *see also United States v. Murdock*, 290 U.S. 389, 394–95 (1933) (willfulness "means an act done with a bad purpose" "without justifiable excuse" "stubbornly, obstinately, perversely" and "is also employed to characterize a thing done without ground for believing it is lawful, or conduct marked by careless disregard whether or not one has the right so to act" (cleaned up, collecting cases)), *overruled on other grounds by Murphy v. Waterfront Comm'n of N.Y. Harbor*, 378 U.S. 52 (1964).

By keeping the "willfully fails or refuses" language in enacting INA § 243 and INA § 274D after *Heikkinen*, Congress intended to keep the Court's "no bad purpose" interpretation of "willfully." *See Lorillard v. Pons*, 434 U.S 575, 580 (1978) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change."). The Court has long held that in reenacting statutory language after the Court has previously construed the same language means that Congress adopted the Court's construction. *United States v. Cerecedo Hermanos y Compania*, 209 U.S. 337, 339 (1908); *see also Hecht v. Malley*, 265 U.S. 144, 153 (1923); *National Lead Co. v. United States*, 252 U.S. 140, 146–47 (1920); *United States v. G. Falk & Brother*, 204 U.S. 143, 152 (1907). Accordingly, by keeping the "willfully fails or refuses" language in enacting INA § 243 and INA § 274D after *Heikkinen*, Congress intended to keep the Court's "no bad purpose" interpretation of "willfully."

DHS cannot impose the fine absent evidence to support each element required to sustain a fine under INA § 274D. *See* 5 U.S.C. § 556 ("A sanction may not be imposed or rule or order issued except on consideration of the whole record or those parts thereof cited by a party and supported by and in accordance with the reliable, probative, and substantial evidence."); *see also* 8 C.F.R. § 281.1(e)(2) (discussing the record for review, which "shall include . . . evidence

6

The plain language of INA § 274D reaches only willful failures or willful refusals to take the actions listed in the statute. *See United States v. X–Citement Video, Inc.*, 513 U.S. 64, 68 (1994) (holding that the "most natural grammatical reading" of a statute is when the initial adverb modifies each verb after it).

Absent evidence of willfulness, there can be no liability. "One of the most basic interpretive canons," the "rule against superfluities," requires a factfinder to give meaning to each word in a statute. *Corley v. United States*, 556 U.S. 303, 314 (2009). If any failure to depart were enough to incur liability under INA § 274D, Congress would not have specifically included the word "willfully" to modify the verbs in the statute. *See Corley*, 556 U.S. at 314.

Neither the governing statute nor regulations define "willfulness" for purposes of imposing a civil fine for presenting oneself for removal from the United States. INA § 274D; 8 C.F.R. § 281.1, *et seq.* Congress used the identical words "willfully fail or refuse" in both the civil and criminal failure to depart statutes. *Compare* INA § 274D *with* INA § 243. Where Congress uses the same words in the same statutory scheme, an adjudicator should presume that the meaning is the same, absent evidence to the contrary. *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 232 (2007) (stating "a standard principle of statutory construction provides that identical words and phrases within the same statute should normally be given the same meaning"). Nothing in INA § 274D supports deviating from that settled principle.

Federal courts have interpreted this language in the criminal context to have a limited and specific meaning. *See Heikkinen v. United States*, 355 U.S. 273, 279 (1958) (interpreting Section 20(c) of the Immigration Act of 1917, 39 Stat. 890, as amended, 57 Stat. 553, 64 Stat. 1012, 8 U.S.C. (1946 ed., Supp. IV) § 156(c) which related, in pertinent part, that "(a)ny [noncitizen] against whom an order of deportation is outstanding . . . who shall willfully fail or refuse to depart

5

contained in the Department's administrative files"). Yet DHS has failed to provide evidence of any "bad purpose" to support its willfulness allegation. Nor has DHS provided any evidence that ███████ as requested to and failed has taken any actions required of her, that she failed or refused to cooperate with such requests, that she was aware of the consequences of any alleged failure or refusal, or even that a country was willing to receive her. *See, e.g., United States v. Xiang Wang*, No. 13-CR-20133-JAR, 2014 WL 6472857, at *4 (D. Kan. Nov. 18, 2014) (granting defendant's motion for acquittal of criminal failure to depart charges).

Indeed, DHS has failed to provide any material evidence at all. DHS allegations do not constitute evidence. *See Anderson*, 477 U.S. at 256–57 (discussing difference between allegations and evidence). The relevant statutory provision requires more than proof that an individual has a removal order and is still present in the United States. Many individuals with final orders of removal are present in the U.S. for purposes unrelated to the conduct that may subject them to civil fines. The evidence here is thus woefully insufficient to establish the basis for a civil penalty.

Moreover, as the statement of the facts demonstrates, ███████ had no bad purpose whatsoever. ███████ did not willfully fail or refuse to take any of the alleged actions in the Decision, as she did not have a bad purpose. ███████ still fears returning to Honduras, where she believes she will harmed. In addition, in the time that she has remained in the United States, she has become a mother to two U.S. citizen children and works hard to support them.

DHS must therefore withdraw the proposed fine as it cannot demonstrate that M██ ███████ violated INA § 274D.

7

**B. DHS has not provided an evidentiary or legal basis for seeking to impose a $1,820,352 fine.**

DHS also has failed to establish any evidentiary or legal basis for its imposition of a $1,820,352 fine against ██████████ DHS fails to explain how it has established the start date of ██████████'s alleged offenses. The date a removal order is issued does not dictate the date by which an individual willfully fails or refuses to depart the U.S. or otherwise willfully fails or refuses to take other steps related to such a departure as noncitizens are entitled to appeal such removal orders, may file motions to reopen or affirmative applications for relief, and seek other remedies. Moreover, even if a noncitizen does not seek any other remedies, willfulness must be established through evidence of bad purpose, and DHS has not proven any willfulness let alone the date when such willfulness began. Therefore, DHS cannot support the imposition of a $1,820,352 fine against ██████████.

**III. The Decision violates ██████████'s constitutional rights.**

In addition to failing to meet its burden of proof, DHS violates ██████████ s constitutional rights through the imposition of a civil penalty via the Decision.

**A. The decision violates the "Excessive Fines" Clause of the United States Constitution.**

The Decision violates the Excessive Fines Clause of the Eighth Amendment. U.S. Const. amend. VIII. To violate the Eighth Amendment's prohibition on excessive fines, a required payment must be (1) a fine, and (2) excessive. *See United States v. Bajakajian*, 524 U.S. 321, 334 (1998). The fine in this case meets both prongs of the test.

*1. The civil penalty is a "fine"*

First, civil penalties under § 274D constitute a "fine" for purposes of the Eighth Amendment because they are at least partially punitive. "[A] civil sanction that cannot fairly be

8

said solely to serve a remedial purpose but rather can only be explained as also serving either retributive or deterrent purposes, is punishment" for purposes of the Excessive Fines Clause. *Austin v. United States*, 509 U.S. 602, 610 (1993) (quoting *United States v. Halper*, 490 U.S. 435, 447–448 (1989)). Thus, the salient question in excessive fines cases is whether a payment is at least partially punitive, or entirely remedial. *See Id.* at 610–11.

Here, the proposed fine is at least partially punitive. The statutory provision itself frames the fine as a "penalty." *See* § 274D(a) (providing that a noncitizen "shall pay a civil penalty of not more than $500 to the Commissioner for each day the [noncitizen] is in violation of this section"); *see Gonzalez v. Sessions*, 894 F.3d 131, 139–40 (4th Cir. 2018) ("Likewise, other references to 'penalties' in the Act correspond to the common punitive understanding of the term, providing an adjudicator with discretion to impose a sanction proportionate to the defendant's wrongdoing.").

DHS itself admits that the penalty serves a deterrent, not remedial, purpose. In January 2025, DHS issued an annual rule under the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, on the stated rationale that adjusting the statutory penalty for inflation allows the agency to "improve the effectiveness of civil monetary penalties and [] maintain their deterrent effect." 90 Fed. Reg. 1, 1 (Jan. 2, 2025). There is nothing in the statute or legislative history of the act that suggests the $998 daily fines imposed here are remedial at all—let alone that the amounts imposed are based on an individualized assessment of cost to the U.S. Indeed, DHS has neither alleged nor proven that ██████████'s continuing presence in the U.S. has cost the government anything, much less the $1,820,352 imposed by DHS's decision. Any such allegations would be absurd, as ██████████ has supported herself and has contributed to the U.S. economy, including by paying taxes every year since around 2019.

9

Because the civil penalties at issue here are intended to secure compliance with an order of removal, they are punitive. "Civil fines that seek to deter rule-breaking or enforce compliance are punitive in character." *Farina v. Metropolitan Trans. Auth.*, 409 F. Supp. 3d 173, 198 (S.D.N.Y. 2019). The Administration announced it would levy fines as part of its purported efforts "to encourage and assist [noncitizens] illegally in the country to elect to depart from the United States." Establishing Project Homecoming, *supra* n.1. Just as imposing a fine to "secure compliance with toll obligations" is punitive, *Farina*, 409 F. Supp. 3d at 198, so too are the civil penalties here, designed to encourage "self-deportation." Civil fines under § 274D(a) thus fall within the category of fines covered by the Eighth Amendment.

*2. The civil penalty is excessive*

Second, the fine here is "excessive" under the Eighth Amendment. A fine is constitutionally excessive if it is "grossly disproportionate" to the gravity of the offense. *See Bajakajian*, 524 U.S. at 334. *Bajakajian* used a multi-factor analysis to determine gross disproportionality. *Id.* These factors generally include, but are not limited to: 1) the nature or essence of underlying offense, 2) the relation of the underlying offense to other illegal activities, 3) whether the fine recipient fits into class of persons for whom statute was principally designed, 4) the amount of the fine and its relationship to authorized penalties, 5) the maximum sentence and/or fine that could be imposed, 6) other penalties that may be imposed, and 7) harm caused by underlying conduct. Importantly, economic sanctions historically must "be proportioned to the wrong" and "not be so large as to deprive [an offender] of his livelihood." *Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 271 (1989); *see also Timbs v. Indiana*, 586 U.S. 146, 151–52 (2019) (citing 4 W. Blackstone, Commentaries on the Laws of England 372

10

(1769) ("[N]o man shall have a larger amercement[5] imposed upon him, than his circumstances or personal estate will bear.").

Here, a fine of $1,820,352 is grossly disproportionate to the alleged "offense," remaining in the country following an order of removal. It would deprive ██████████ of her livelihood and destroy her financial future irrespective of whether she otherwise has the ability to obtain authorization to remain in the United States. Notably, mere presence in the U.S. without immigration authorization is not a crime. The statute at issue was not designed to target individuals who are pursuing legal remedies or remaining in the U.S. with their family members. Her presence is an asset not a harm to United States, especially considering her critical role in supporting her U.S. citizen children.

Finally, M██████████ s individual circumstances reveal the disproportionate nature of the fine. "A number of modern state and federal courts have joined the chorus of legal scholars to conclude that the history of the clause and the reasoning of the Supreme Court strongly suggest that considering ability to pay is constitutionally required." *Seattle v. Long*, 493 P.3d 94, 112 (Wash. 2021) (collecting cases). The U.S. Department of Justice previously endorsed courts' "consideration of an individual's economic circumstances" under the Eighth Amendment. Dear Colleague Letter at 5, U.S. Dep't of Justice (Apr. 20, 2023), available at: https://www.justice.gov/opa/pr/justice-department-issues-dear-colleague-letter-courts-regarding-fines-and-fees-youth-and (citing *Long*, 493 P.3d at 112; *Dep't of Labor & Emp't v. Dami Hosp., LLC*, 442 P.3d 94, 101 (Colo. 2019); *Commonwealth v. 1997 Chevrolet*, 106 A.3d 836, 871 (Pa. 2014)). ██████████'s individual circumstances demonstrate she cannot afford the

_____

[5] At the time of the Magna Carta, amercements were payments to the King, required of individuals who were "in the King's mercy," because of some offensive act. *Browning-Ferris*, 492 U.S. at 269.

11

amount assessed and it is, therefore, disproportionate. M ▇▇▇▇ is currently working and earns enough only to survive. She is unable to pay any fine, let alone one of the magnitude assessed by DHS in this case.

Rather, the fine in this case appears calculated for political reasons as part of the current administration's corrosive, xenophobic, and racist rhetoric against immigrants. Fines may not be used for political purposes. *Timbs*, 586 U.S. at 153–54 ("[T]he protection against excessive fines has been a constant shield throughout Anglo-American history: Exorbitant tolls undermine other constitutional liberties. Excessive fines can be used, for example, to retaliate against or chill the speech of political enemies."); *Browning-Ferris*, 492 U.S. at 266 (noting that the Magna Carta "was aimed at putting limits on the power of the King . . . whether that power be exercised for purposes of oppressing political opponents, for raising revenue in unfair ways, or for any other improper use" and that "the primary focus of the Eighth Amendment was the potential for governmental abuse of its 'prosecutorial' power"). As a result, permitting the civil penalties at issue here—as a means of targeting a disfavored group to which ▇▇▇▇ belongs—would flout the very concerns the Excessive Fines Clause was meant to address.

For all of these reasons, the fine violates the Eighth Amendment.

**B. The Decision Violates the Seventh Amendment Right to Trial by Jury.**

The Notice's summary imposition of punitive fines without a jury trial as to liability for a knowing violation violates M ▇▇▇▇ s Seventh Amendment right to trial by jury. *Tull v. U.S.*, 481 U.S. 412, 426–427 (1987); *Sec. & Exch. Comm'n v. Jarkesy*, 603 U.S. 109, 123 (2024). The civil fines are "designed to punish or deter the wrongdoer" and are therefore "a type of remedy at common law that could only be enforced in courts of law." *See Jarkesy*, 603 U.S. at 123 (cleaned up). Importantly, these civil fines apply to individuals in the U.S. whose rights

are protected by the U.S. Constitution. This includes their right to a trial by jury, which DHS seeks to deny here.

**C. The Decision Violates the Fifth Amendment Guarantee of Due Process.**

"[D]ue process requires that courts provide notice and opportunity to be heard before imposing any kind of sanctions." *SEC v. McCarthy*, 332 F.3d 650, 659 (9th Cir. 2003) (quoting *Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 96 (2d Cir. 1997) (quoting *In re Ames Dep't Stores, Inc.*, 76 F.3d 66, 70 (2d Cir. 1996)); *see also Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) ('The fundamental requisite of due process of law is the opportunity to be heard.' . . . This right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." (quoting *Grannis v. Ordean*, 234 U.S. 385, 394 (1914)).

Procedural due process requires that a person facing deprivation of a constitutionally protected interest have an opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Generally, courts weigh three factors in deciding how much process is due – the nature of the interest at stake, the risk of erroneous deprivation and how additional process would reduce that risk, and the administrative burden on the government. *Id.* First, as to the nature of the private interest that will be affected by the official action, ▇▇▇▇ aces a fine of $1,820,352, which would deprive her of "the very means by which" she supports herself and her family. *Goldberg v. Kelly*, 397 U.S. 254, 264 (1970). Second, the risk of an erroneous deprivation of such interest through the procedures used is high because there has been no evidence provided to ▇▇▇▇ to establish the basis for the fine or support the allegations of willfulness. *Mathews*, 424 U.S. at 335; *Marshall*, 446 U.S. at 243 (noting biased decision-making can lead to "unjustified or mistaken

deprivations"). Moreover, additional or substitute procedural safeguards—such as the right to receive and contest evidence, the right to a hearing, and the right to a determination by a neutral arbitrator—have high "probative value" in determining the basis for these allegations. *Mathews*, 424 U.S. at 335. Third, "the Government's interest" lies in accurate determinations of civil fines; "the fiscal and administrative burdens that the additional or substitute procedural requirement would entail" are minimal, as the government already has access to the evidence that it used to issue its fine notices, and simply needs to ensure that any determination is made by a neutral party in an adversarial setting. *Id.* Simply put, the demands of the Due Process Clause require more than what DHS provided here.

*1. Insufficient notice: insufficient allegations and evidence*

In order to provide adequate due process, a notice must clearly inform the recipient of the matters of fact and law asserted, including what constitutes willfulness under these circumstances, and what factors are relevant to defenses or challenges to the penalty. 5 U.S.C. § 554(b). The Decision fails to do this. As noted above, DHS has also provided no evidence with their notice, which fundamentally prevents ▇▇▇▇ from being able to respond. 5 U.S.C. § 556 ("A sanction may not be imposed or rule or order issued except on consideration of the whole record or those parts thereof cited by a party and supported by and in accordance with the reliable, probative, and substantial evidence.").

*2. Insufficient notice: Failure to Itemize*

The Decision is dated February 12, 2026, but apparently (without providing an accounting) calculates the alleged violation as having commenced on June 22, 2017. As noted above, it states a lump sum, without itemizing when the fines allegedly accrued.

The amount of daily fines has increased incrementally over time, as the regulation at 8 C.F.R. § 280.53(b)(14) was amended, beginning with the December 1, 2011 amendment pursuant to 76 Fed. Reg. 74628 (daily fine increasing from $500 to $550); to the July 1, 2016 amendment pursuant to 81 Fed. Reg. 42990 (daily fine increasing from $550 to $751); to the January 27, 2017 amendment pursuant to 82 Fed. Reg. 8580 (daily fine increasing from $751 to $763); to the April 2, 2018 amendment pursuant to 83 Fed. Reg. 13835 (daily fine increasing from $763 to $779); to the April 5, 2019 amendment pursuant to 84 Fed. Reg. 13509 (daily fine increasing from $779 to $799); to the June 17, 2020 amendment pursuant to 85 Fed. Reg. 36479 (daily fine increasing from $799 to $813); to the October 18, 2021 amendment pursuant to 86 Fed. Reg. 57540 (daily fine increasing from $813 to $823); to the January 11, 2022 amendment pursuant to 87 Fed. Reg. 1327 (daily fine increasing from $823 to $874); to the January 13, 2023 amendment pursuant to 88 Fed. Reg. 2183 (daily fine increasing from $874 to $942); to the June 28, 2024 amendment pursuant to 89 Fed. Reg. 53859 (daily fine increasing from $942 to $973); to finally the January 2, 2025 amendment pursuant to 90 Fed. Reg. 10 (daily fine increasing from $973 to $998).

The amount of the fine that allegedly accrued on any given day should have been limited to the amount authorized by the regulation in effect on that day. Absent specific legislative authorization and clear Congressional intent, there is a presumption against retroactivity if, as is the case here, a change in law attaches new consequences to acts that were completed before the change in law. *Landgraf v. USI Film Prods.*, 511 U.S. 244, 246, 270 (1994). This is especially true when the stated rationale for the increase was fixed to the contemporaneous calculation of the effects of inflation throughout what multiyear period. This is assuming more than is in the notice itself, of course, because DHS has charged ▇▇▇▇ a lump sum, without itemizing the exact amounts that DHS alleges to have accrued on any specific dates or timeframe. In the



absence of itemization of specific dates or timeframes, DHS has deprived ▬▬▬▬ of a meaningful opportunity to contest.

### 3. *Insufficient notice: failure to define possible defenses*

The Decision refers to defenses but provides no relevant factors, depriving ▬▬▬▬ of any meaningful opportunity to correct any such unlawful conduct before accruing a $1,820,352 fine. Nor has she been provided a meaningful opportunity to be heard on the facts and law at issue in these proceedings. DHS has provided no evidence in support of its allegations, making it impossible for ▬▬▬▬ to respond.

### 4. *Lack of Meaningful Opportunity to Be Heard: Failure to Use a Neutral Arbiter*

Any appeal of the Decision, issued by DHS, is reviewed within DHS by "a supervisory immigration officer who did not issue the original decision." 8 CFR § 281.1(e)(2). It is true that "due process rights are not violated simply by the combination of the investigative, prosecutorial, and adjudicative functions in one agency... [r]ather, actual bias or a high probability of bias must be present before due process concerns are raised." *Marshall v. Cuomo*, 192 F.3d 473, 484 (4th Cir. 1999) (citing *Withrow v. Larkin*, 421 U.S. 35, 46–53 (1975)). "This presumption can be rebutted by a showing of conflict of interest or some other specific reason for disqualification." *Schweiker v. McClure*, 456 U.S. 188, 196-197 (1982) (internal citations omitted). Such a conflict may include a financial interest in the outcome of the adjudication. *Ward v. Village of Monroeville*, 409 U.S. 57, 60 (1972).

There is such a financial conflict of interest here. Proceeds from fines assessed under § 274D are not deposited into the General Fund, but rather to a special "Immigration Enforcement Account." 8 U.S.C. § 1330(2). This account is used to fund immigration enforcement activities

such as those carried out by DHS. *Id.* at (3)(A). This creates a financial incentive that necessarily impairs the impartiality of the hearing officer as provided in 8 C.F.R. § 281.1(e)(2).

### IV. **If DHS does impose a fine despite the numerous issues discussed above, the fine should be minimal due to mitigating factors.**

As noted above, DHS has provided no guidance to noncitizens on how they may challenge fines and what defenses are relevant. The prior DHS civil fine regulations also referred to consideration of "requested mitigation or remission" upon receiving an answer to a Notice of Intention to Fine. *See* 8 C.F.R. § 280.13. By contrast, the new regulations state that noncitizens "who are subject to unlawful entry and failure-to-depart penalties cannot seek mitigation." *Imposition and Collection of Civil Penalties for Certain Immigration-Related Violations*, 90 Fed. Reg. 27439, 27448 (June 27, 2025). In promulgating a rule to adjust various other civil penalties, the federal government noted that the amount of a fine can be mitigated due to various factors in the case, including "individual circumstances, the severity of the damage or harm caused by the violation, and any mitigating factors in favor of a less-than-maximum penalty." *Civil Monetary Penalties Inflation Adjustment*, 84 Fed. Reg. 13520, 13522 (Apr. 5, 2019). So, too, should DHS recognize similar mitigating factors when setting a civil penalty here under INA § 274D. Failure to do so is arbitrary and capricious.

There are many positive factors in the present case that demonstrate that, if DHS does impose a fine, that fine should be a minimal one and far less than the maximum possible penalty. ▬▬▬▬ has been working and paying her taxes in the United States for the past roughly seven years. She is the mother of two U.S. citizen children. ▬▬▬▬ is using all of her limited resources to support her children and provide them with housing and food.

These equities weigh in favor of imposing a minimal fine, if any.

### CONCLUSION

For the reasons stated above, DHS should withdraw the fine in ▬▬▬▬ s case. If it fails to do so, it should significantly mitigate that fine and impose a minimal fine.

Respectfully submitted this 6th day of March, 2026:

Daniela Czemerinski
Legal Aid Justice Center
6402 Arlington Blvd., Ste. 1130
Falls Church, VA 22042
(434) 484-9859
daniela@justi▬▬▬▬
*Attorney for* ▬▬▬▬